IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**VERIZON ADVANCED DATA, INC.,** :
et al.,
: Case No. 2:05-CV-955
   **Plaintiffs,**
: **Judge Holschuh**
      v.
: **Magistrate Judge King**
**FROGNET, INC., et al.,**
:
   **Defendants.**
:

**MEMORANDUM OPINION & ORDER**

Plaintiffs Verizon Advanced Data, Inc., Verizon Advanced Data-Virginia, Inc., and Verizon Select Services, Inc. (collectively, "Verizon") sued Defendants Frognet, Inc. and Frognet DSL, LLC (together, "Frognet"), seeking to recover money owed for services rendered under two separate contracts. Verizon sought recovery under theories of breach of contract, account, and unjust enrichment. Verizon also brought a claim of defamation. Frognet later asserted counterclaims of breach of contract, intentional interference with business relationships, negligence, and defamation. The Court's jurisdiction is based on diversity of citizenship. See 28 U.S.C. § 1332. This matter is currently before the Court on Frognet's motion to stay the proceedings and to compel arbitration. (Record at 5).

I.   **Background and Procedural History**

This is a case involving two separate contracts, one with an arbitration clause and one without. On June 19, 2001, Verizon Advanced Data, Inc. and Verizon Data-Virginia, Inc. entered into a contract (hereafter "Contract 1") with Frognet, whereby Verizon provided wholesale broadband DSL services to Frognet so that Frognet, in turn, could provide Internet

services to individual and commercial consumers. (Compl. at ¶¶ 6, 8, 10; Ex. A to Compl.). Contract 1 contained no arbitration provision.

On March 17, 2003, Verizon Select Services, Inc. and Frognet entered into a second contract ("Contract 2"), which allowed Frognet to obtain the use of a high-speed private line from Verizon. (Compl. at ¶ 9; Ex. B to Compl.). Contract 2 contained a mandatory alternative dispute resolution provision, which reads as follows:

> The parties desire to resolve disputes arising out of this Agreement without litigation. Accordingly, . . . the parties agree to follow the ADR procedure set forth herein as their sole remedy with respect to any controversy or claim arising out of or relating to this Agreement or its breach.

Ex. B to Compl. at ¶ 14.

On October 19, 2005, Verizon filed suit against Frognet. According to the Complaint, in 2003, Frognet stopped paying its bills, forcing Verizon to terminate its services to Frognet. Verizon alleges that, as of April 1, 2005, Frognet owes a total of $180,564.06, plus interest, for services rendered under Contract 1 and Contract 2. (Compl. at ¶¶11-14). Verizon seeks recovery under theories of breach of contract, account, and unjust enrichment. Verizon also asserts a claim of defamation, based on allegedly false statements about Verizon contained in an e-mail Frognet sent to Frognet customers. (Ex. D to Compl.).[1]

Frognet filed a motion to stay litigation and to compel arbitration as required by the mandatory arbitration provision in Contract 2. Verizon filed a response conceding that the

---

[1] Frognet has summarily argued that, with respect to this defamation claim, Verizon has failed to state a claim upon which relief may be granted. Verizon notes, however, that Frognet has not articulated any legal basis for this argument. For the reasons stated herein, at this stage of the litigation, the Court need not decide whether Verizon's allegations are sufficient to state a claim of defamation.

2

claims that arose under Contract 2 are subject to arbitration. Verizon, however, refused to arbitrate the claims that arose under Contract 1. In its reply, Frognet urges the Court to compel arbitration of all claims to avoid piecemeal litigation.

While the motion to compel was still pending, Frognet filed its Answer to Verizon's Complaint, and asserted five counterclaims. The first two counterclaims allege breaches of Contract 1. The third counterclaim alleges that Verizon intentionally interfered with Frognet's business relationships with certain customers when, on May 23, 2003, Verizon cut off services to Frognet's customers in the Dayton area and re-classified those customers as Verizon customers. The fourth counterclaim alleges that Verizon was negligent in investigating billing disputes arising under Contract 1. The fifth counterclaim asserts a claim of defamation based on statements Verizon representatives allegedly made to Frognet customers in June and July of 2003. With leave of Court, Verizon filed a sur-reply, arguing that because the counterclaims arose out of Contract 1, they are not subject to arbitration.

**II.     Discussion**

Since Verizon now concedes that it is required to arbitrate the contract claims arising out of Contract 2, the only remaining question is whether the Court, in the interest of judicial economy, can also compel Verizon to arbitrate the contract claims arising out of Contract 1, the defamation claim, or any of the counterclaims asserted by Frognet.

**A.     Applicable Law**

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 2, embodies a federal policy favoring arbitration. The scope of an arbitration clause is determined by federal law, and the United States Supreme Court has held that "any doubts concerning the scope of arbitrable issues should

3

be resolved in favor of arbitration." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983). A court should not deny a motion to compel arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." AT&T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 650 (1986)(quotation omitted).

At the same time, however, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." United Steelworkers of America v. Warrior & Gulf Nav. Co., 363 U.S. 574, 582 (1960). Therefore, despite the strong policy in favor of arbitration, courts can require arbitration only of those claims that the parties have agreed to arbitrate, even if this results in "bifurcated proceedings." Dean Witter Reynolds, Inc., v. Byrd, 470 U.S. 213, 220-21 (1985). As the Supreme Court noted in Moses H. Cone, the FAA "*requires* piecemeal resolution when necessary to give effect to an arbitration agreement." 460 U.S. at 20 (emphasis in original). In determining whether a particular claim falls within the scope of an arbitration provision, "[a] proper method of analysis . . . is to ask if an action could be maintained without reference to the contract or relationship at issue. If it could, it is likely outside the scope of the arbitration agreement." Fazio v. Lehman Bros., Inc., 340 F.3d 386, 395 (6th Cir. 2003).

**B.  Scope of Arbitration Provision**

The arbitration clause at issue in this case, contained in Contract 2, provides that the parties "agree to follow the ADR procedure set forth herein as their sole remedy with respect to any controversy or claim arising out of or relating to this Agreement or its breach." Ex. B to Compl. at ¶ 14.

        **1.**      **Arbitration Clause Does Not Reach Contract Claims Arising Out of Contract 1**

An arbitration clause containing the phrase "any claim or controversy arising out of or relating to this agreement" is considered the paradigm of a broad arbitration clause. Such a clause generally requires arbitration of all claims touching matters covered by the agreement. See Parsley v. Terminix Int'l Co., No. C-3-97-394, 1998 WL 1572764, at *6 (S.D. Ohio Sept. 15, 1998). In cases involving broad arbitration clauses, the Supreme Court has found the presumption of arbitrability "particularly applicable."

Frognet argues that, in this case, where the claims "arise from a single, long-term set of facts," it makes more sense to submit all of the claims to arbitration rather than proceed in a piecemeal fashion, arbitrating some claims and litigating others. (Reply Brief at 2). While this may be true, the Court, as discussed above, cannot compel arbitration of claims that fall outside the scope of the arbitration provision contained in Contract 2. That arbitration provision contains no language from which the Court could find that the parties agreed to arbitrate anything other than claims that arose from or were related to Contract 2.

As the Sixth Circuit held in Security Watch, Inc. v. Sentinel Systems, Inc., 176 F.3d 369 (6th Cir. 1999), an arbitration clause cannot cover disputes arising out of or relating to contracts that pre-date the clause unless the agreement containing the clause expressly contemplates such retroactivity. In Security Watch, the parties entered into seven annual contracts that governed the sale of products in seven successive years. The first six contracts did not contain arbitration clauses. The seventh contract contained a clause mandating alternative dispute resolution for "all disputes, controversies, or claims . . . arising out of or relating to the Products furnished pursuant to this Agreement." The district court determined that all claims arising out of the

relationship between the parties were subject to this arbitration provision. On appeal, the Sixth Circuit reversed. Because the seventh agreement did not refer to the previous contracts, the Court concluded that disputes arising under the prior contracts were distinct and not subject to arbitration. Id. at 373-74.

Likewise, in this case, nothing in the arbitration provision in Contract 2 contemplates that claims arising under any earlier contracts would also be subject to arbitration. Furthermore, Frognet has failed to explain how Contract 1 is related to Contract 2, if at all. For all of these reasons, the Court concludes that the contract claims and counterclaims arising out of Contract 1 are not subject to arbitration.

### 2. Arbitration Clause Does Not Reach Tort Claims Arising Out of Contract 1

In this case, the parties have asserted several tort claims. Verizon has asserted a defamation claim, and Frognet has asserted counterclaims of intentional interference with business relationships, negligence, and defamation. Verizon argues that the parties never agreed to arbitrate tort claims. However, broad arbitration provisions like the one contained in Contract 2 mandate arbitration of not only contract claims, but also tort claims if those claims are related to the contract. See Parsley, 1998 WL 1572764, at *6 (interpreting the broad arbitration provision to "encompass all claims, contractual or tort, touching on the contract"). Therefore, the tort claims asserted by the parties are not necessarily excluded from the scope of the arbitration clause. They could be subject to arbitration if they arose out of or were related to Contract 2.

Nevertheless, it appears to the Court that all of the tort claims asserted by the parties arise solely out of Contract 1, which provides for DSL services, and are not related to Contract 2,

which provides for a high-speed private line. Neither party has argued to the contrary. Verizon's defamation claim is based on statements contained in an e-mail message Frognet sent to Frognet customers notifying them that Frognet would no longer be able to provide DSL service. Frognet's counterclaim of intentional interference with business relationships deals with the same subject matter. Frognet's counterclaim of negligence, on its face, is based on Verizon's alleged failure to follow procedures for resolving billing disputes, as set forth in Contract 1; in addition, the counterclaim specifically states that the billing disputes at issue involved DSL-related services. Likewise, Frognet's defamation counterclaim is based on statements allegedly made by Verizon representatives concerning Frognet's ability to provide DSL services. Because these tort claims do not arise out of Contract 2 and are not related to Contract 2, the Court concludes that they are not subject to arbitration.

### C. Stay of Proceedings

The FAA requires courts to stay litigation pending arbitration. See 9 U.S.C. § 3. The United States Supreme Court has stated that when a dispute is subject to arbitration, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed by arbitration on issues as to which an arbitration agreement has been signed." Byrd, 470 U.S. at 218 (emphasis in original). The Court therefore grants Frognet's motion to stay with respect to all contract claims arising out of Contract 2.

With respect to the claims and counterclaims not subject to arbitration, *i.e.,* those arising out of Contract 1, the Court, in its discretion, may stay their litigation until the arbitration proceedings have concluded. See Air Line Pilots Ass'n v. Miller, 523 U.S. 866, 879 n.6 (1998). In this case, there is good reason to stay the entire case pending arbitration of the claims arising

out of Contract 2.  Because the contract claims asserted by Verizon do not distinguish the claims arising out of Contract 1 from the claims arising out of Contract 2, the Court is unable to decipher which portions of the contract claims are subject to arbitration.  The parties are in a much better position to make that determination.  While the Court could allow the parties to proceed with the litigation of the tort claims arising from Contract 1, the Court concludes that, under the circumstances presented here, it makes more sense to stay all claims pending arbitration.  Within 30 days after that arbitration is concluded, Verizon shall file a motion to lift the stay, along with an Amended Complaint setting forth those causes of action that remain to be litigated.  Should Frognet desire to re-file its counterclaims, it may then do so.

### III.     Conclusion

For the foregoing reasons, the Court **GRANTS IN PART and DENIES IN PART** Frognet's motion to compel arbitration, and **GRANTS** Frognet's motion to stay all proceedings pending arbitration.  (Record at 5).  Within 30 days after arbitration of those claims arising out of Contract 2, Verizon shall file a motion to lift the stay, along with an Amended Complaint.

**IT IS SO ORDERED.**

Date: August 14, 2006                             **/s/ John D. Holschuh**
                                                                                 John D. Holschuh, Judge
                                                                                United States District Court